**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-60912

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

VERSUS

COLBURN ELECTRIC CO.,

Respondent.

Application for Enforcement of an Order of the
National Labor Relations Board

(Cases 15-CA-13614 and 15-CA-13617)

December 4, 2002

Before DAVIS, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

After reviewing the briefs and the NLRB's decision, we find that Colburn has not shown a lack of substantial evidence supporting the Board's factual findings, nor has it shown that the Board's legal conclusions are inconsistent with the National Labor

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

Relations Act.[1]  We therefore GRANT the Board's application for enforcement of its order.

## I.  Colburn's No-Solicitation Policy

In NLRB v. Roney Plaza Apartments, we found that the ultimate question in cases like this one is "whether the employer's actions . . . interfered with the organizational rights of employees under the Act."[2]  A no-solicitation rule that prohibits only union solicitation is an interference with those rights that violates § 8(a)(1) of the NLRA.[3]  Colburn contends that its rule was not designed to prohibit employees from merely "talking" about the Union on working time, but was instead narrowly tailored to prevent "union activity" amounting to harassment.  But even if this distinction between "union activity" and "union talk" is meaningful, the rule still singles out union activity for prohibition while permitting nonunion, nonwork-related activity, which could just as easily amount to harassment and disrupt work. Thus, Clifford Zylks' alleged union-related harassment of a fellow

---

[1]  See Cent. Freight Lines, Inc. v. NLRB, 666 F.2d 238, 239 (5th Cir. 1982) ("We must sustain the Board's findings if they are supported by substantial evidence on the record considered as a whole."); Valmont Indus. v. NLRB, 244 F.3d 454, 463 (5th Cir. 2001) ("A reviewing court will uphold the Board's decision if it is reasonable and supported by substantial evidence on the record considered as a whole."); Poly-America, Inc. v. NLRB, 260 F.3d 465, 476 (5th Cir. 2001) ("We review questions of law de novo, but defer to the legal conclusions of the Board if reasonably grounded in the law and not inconsistent with the Act.") (citations omitted).

[2]  597 F.2d 1046, 1048–49 (5th Cir. 1979).

[3]  See id. at 1050.

employee does not justify Colburn's implementation of a discriminatory no-solicitation policy.[4]

Colburn also may not justify its policy by citing the provision that permitted employees to engage in union activity during "breaks or lunch" because that provision does nothing to alter the rule's discriminatory core language, which singles out union activity for punishment.[5] And because Colburn's rule is unlawful on its face, a determination of whether its application had a discriminatory effect is unnecessary.[6] In other words, the facially discriminatory rule supports the Board's conclusion that Colburn interfered with the organizational rights of its employees in violation of § 8(a)(1).

## II.  Discharge of Clifford Zylks

Colburn argues that Zylks was discharged for disrupting the work of a fellow employee and for declaring that he would continue such activities anytime he felt like it.  In Roney Plaza, the

---

[4]  See id. at 1048–51 (finding that an employer was not entitled to impose a no-solicitation policy that singled out union solicitation during work time, despite allegations that an employee who engaged in union solicitation had frightened and harassed employees and had interrupted their work).

[5]  See id. at 1049–50 (concluding that a no-solicitation policy was unlawful where it singled out union activity for punishment, even though the policy permitted union activity during lunch or breaks).

[6]  Cf. NLRB v. Pneu-Elec., Inc., 309 F.3d 843, 850 (5th Cir. 2002) ("The test for determining whether an employer has violated § 8(a)(1) is whether the employer's questions, threats, or statements tend to be coercive, not whether the employees are in fact coerced.") (internal quotation and citation omitted).

-3-

employer also attempted to justify a discharge by citing the employee's interruption of the work of others and his insubordination in continuing to engage in at-work solicitation.[7] This court found, however, that "[b]oth reasons are removed by our conclusion that substantial evidence supports the Board's finding of an invalid no solicitation policy."[8] Similarly, Zylks' defiance in this case is "inextricably involved" with Colburn's promulgation of a rule that discriminatorily prohibited union activity during working hours.[9] At the hearing before the ALJ, job superintendent Robert Jackson testified that Zylks "told me he would conduct union business any time that he felt like it. And therefore, I fired him." This testimony constitutes substantial evidence supporting the Board's finding that Zylks' protected activity was a motivating factor in his discharge. The discharge was therefore unlawful unless the record compels the conclusion that Colburn would have fired Zylks even in the absence of his union activity.[10] As the ALJ and the Board correctly determined, the record cannot support that conclusion because the very reason for the discharge was Zylks' intent to continue his union activity. Because Jackson's testimony reveals that the purportedly legitimate reasons offered by Colburn

---

[7] See 597 F.2d at 1050-51.

[8] Id. at 1051.

[9] See id.

[10] See generally NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 397-403 (1983).

are pretextual, we cannot disturb the Board's finding that Colburn discharged Zylks in violation of §§ 8(a)(1) and (3) of the NLRA.

**APPLICATION FOR ENFORCEMENT GRANTED.**